UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE HUDSON, JR.,

    Plaintiff,

    v.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, *et al.*,

    Defendants.

Civil Action No. 19-2738 (JEB)

**MEMORANDUM OPINION**

This latest iteration of Plaintiff Eugene Hudson's dispute with his union — Defendant Local 1923 of parent and co-Defendant American Federation of Government Employees — concerns his candidacy in the upcoming election for President of the Local. Hudson seeks a preliminary injunction to require the Local to reinstate him as a member in good standing so that he may compete in the election. Although Defendant Department of Labor, which is supervising the election, has already certified that his candidacy is viable, Plaintiff asks the Court to intervene. While there are multiple reasons why Hudson cannot prevail in his Motion here, two are that the Court lacks jurisdiction to decide his underlying claim under the Labor-Management Reporting and Disclosure Act and that Hudson has not established irreparable harm.

**I.    Background**

This Court has issued multiple Opinions in the several cases Hudson has filed relating to his long-running series of disputes with AFGE and Local 1923, and those Opinions fill in the background to the current controversy. See, e.g., Hudson v. Am. Fed. of Gov't Employees, 2019 WL 3533602, at *1–2 (D.D.C. Aug. 2, 2019); Hudson v. Am. Fed. of Gov't Employees, 289 F.

1

Supp. 3d 121, 123–25 (D.D.C. 2018). The Court will not retread this ground but will instead focus only on the facts relevant to the instant Motion. Hudson initiated this action in September of this year, see ECF No. 1, and the current operative Complaint is the "Corrected Amended Complaint." See ECF No. 25; see also Minute Order of Oct. 31, 2019 ("The operative Complaint is thus the so-called Corrected Amended Complaint."). That pleading sets out eight counts, which are somewhat jumbled in their conflation of violations of the LMRDA, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. See Corrected Amended Complaint, Counts I–II, V–VIII.

The focus in the latest Motion for Preliminary Injunction is fortunately of reasonably narrow scope: "Plaintiff, Eugene Hudson, Jr.[,] asks this Court to order the Defendants AFGE National and AFGE Local 1923 to reinstate him as a member in good standing retroactive to the April 2019 date that his membership was unlawfully dropped with no break in membership and to accept his dues payment for September 2019 through September 2020 which the local recently returned." ECF No. 44 (Pl. Second Motion for PI) at 2. The source of such request is the LMRDA. Id. The reason why this is so important for Hudson is that only members in good standing are eligible to run for office, and he seeks the Presidency of the Local in the election that goes forward later this month. See Cor. Am. Compl., ¶¶ 95–98; see also ECF No. 60 (Notice Regarding Membership Meetings) at 2 (election to conclude on December 18, 2019).

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with

2

the public interest." League of Women Voters of U.S. v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 505 (D.C. Cir. 2016)).

Before the Supreme Court's decision in Winter, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. Davis v. PBGC, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009) (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999)). Both before and after Winter, however, one thing is clear: a failure to show a likelihood of success on the merits alone is sufficient to defeat the motion. Ark. Dairy Coop. Ass'n, Inc. v. USDA, 573 F.3d 815, 832 (D.C. Cir. 2009) (citing Apotex, Inc. v. FDA, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006)); Archdiocese of Wash. v. Wash. Metro. Area Transit Auth., 2017 WL 6314142, at *5 (D.D.C. Dec. 8, 2017).

### III. Analysis

In opposing Plaintiff's Motion here, the various Defendants offer a congeries of reasons why Hudson should not prevail. Given that the election is quickly approaching and an expedited Opinion benefits all parties, the Court will not treat all of these points. It instead separately focuses on the jurisdictional underpinning of Plaintiff's central claim — which relates to his likelihood of success — and the harm he believes that he is currently suffering.

#### A. Likelihood of Success

Plaintiff's Motion never lays out the standards for a preliminary injunction nor explains why he is likely to succeed on the merits of his suit. The Court nonetheless discerns from his operative Complaint and his briefs that the central claim that relates to Hudson's membership derives from the LMRDA. That Act provides that all union members shall have equal rights and privileges to vote and participate in elections, to express their views freely, and to be free from

3

improper discipline. See 29 U.S.C. § 411(a)(1), (2), (5), cited in Cor. Am. Compl. at Counts I–II, V–VII. Hudson, accordingly, contends that he cannot be denied his membership rights.

The difficulty here, however, is that this Court has no jurisdiction under the LMRDA to adjudicate such disputes. See Popkin v. Burwell, 172 F. Supp. 3d 161, 168 (D.D.C. 2016) ("[A] plaintiff cannot show any likelihood of success on the merits if a court lacks subject matter jurisdiction."). As Labor points out, the LMRDA "is applicable only to labor organizations composed, in whole or in part, of private sector employees." ECF No. 53 (DOL Opp. to PI) at 9 (citing 29 CFR §§ 452.11–12). Indeed, the Act explicitly excludes from the definition of "[e]mployer" "the United States or any corporation wholly owned by the Government of the United States or any State or Political subdivision thereof." 29 U.S.C. § 402(e); see also Wildberger v. Am. Fed. of Gov't Employees, 86 F.3d 1188, 1192 (D.C. Cir. 1996) (§ 402(e) "specifically excludes federal, state and local governments"); Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 201 (3d Cir. 1990) (Alito, J.) ("The term 'employer' is defined to exclude 'any State or political subdivision thereof,' as well as the federal government and federal entities.") (citing 29 U.S.C. § 402(e)).

Local 1923, Defendants maintain, "represents only federal employees employed by, among other federal entities, the [Social Security Administration]." DOL Opp. to PI at 9. This is the proposition with which Plaintiff takes issue, arguing in his Reply that "Local 1923 [also] represents employees of the Metropolitan Washington Airports Authority" and that courts have found that the MWAA is not a federal entity. See ECF No. 55 (Pl. Reply) at 4. The Court, consequently, instructed Local 1923 at the oral argument to file a supplemental pleading addressing the status of MWAA employees, which the Union has now done. See ECF No. 59.

4

This Supplemental Brief correctly points out that Plaintiff's argument is a *non sequitur* because the federal nature *vel non* of the MWAA is irrelevant; the LMRDA excludes state- and local-government employers as well. Both statutes and caselaw make clear that the MWAA is a governmental entity rather than a private one. See, e.g., 49 U.S.C. §§ 49103, 49106 (enabling statute defining MWAA as "public authority," a "public body corporate and politic," and a "political subdivision"); Kerpen v. Metro. Washington Airports Auth., 907 F.3d 152, 162 (4th Cir. 2018) (MWAA "not a private entity," but "a public body which may lawfully exercise governmental power").

Given that the presence of MWAA employees does not, therefore, transform Local 1923 into a mixed union representing both private and public employees, the jurisdictional bar of the LMRDA remains operative and means that Hudson is not likely to succeed on the merits of his claims under that Act.

B. Irreparable Harm

Hudson's Motion runs aground on another shoal as well: lack of irreparable harm. The ongoing injury he cites is his inability to campaign on an equal footing with other candidates because he is not being treated as a fully paid member. Yet, DOL has already certified that, as the manager of this election, it is granting him all privileges afforded to any other candidate. See ECF No. 36-1 (Declaration of Stephen Willertz, Director of DOL's Office of Field Operations), ¶ 35 ("Mr. Hudson's nomination to the office of President for the 2019 supervised election of AFGE 1923 Local officers will stand. Mr. Hudson is deemed a bona fide candidate in said election, . . . [and he] is entitled to all the attendant rights of candidacy . . . ."); ECF No. 53-1 (Supplemental Declaration of Stephen Willertz), ¶¶ 21–22 ("Mr. Hudson has been included in and has participated in all candidate activities . . . [and] has been informed of all meetings and

conferences relating to his rights as a candidate in the 2019 DOL-supervised election."). Local 1923, moreover, has, in response to the Court's inquiries at the hearing on the Motion, similarly represented that it "will adhere to DOL's decision regarding Plaintiff's candidacy for office and afford Plaintiff the rights provided to other candidates for office." Notice at 2. Even though "Local 1923's position remains that Plaintiff is not a member in good standing[, . . . it] will not take any action to exclude Plaintiff from its meetings limited to members in good-standing. Plaintiff will be permitted to attend such meetings as would any other candidate for office." Id. Given these representations, the playing field is sufficiently level for Hudson to compete in the election, and he has not been irreparably harmed.

**IV.    Conclusion**

For the above reasons, the Court finds that a preliminary injunction is not warranted here. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 6, 2019