**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EUGENE HUDSON, JR.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 19-2738 (JEB)** |
| **AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,** *et al.***,** | |
| **Defendants.** | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Eugene Hudson, Jr. has been fighting a long-running, multi-front battle with Defendant American Federation of Government Employees.  The current skirmish relates to Hudson's membership in Local 1923, one of AFGE's affiliates, and his annual dues.  The Local contends that it dropped him from its membership rolls after he failed to pay their dues; that decision, in turn, stripped him of multiple rights within the organization, including the right to run for an officer position.  Plaintiff, who thought that he had already paid up, attempted to challenge that result with AFGE.  The national, however, did not step in, pointing out that Hudson's dispute concerned a Local issue.

Believing himself ill treated, Plaintiff brought this suit against AFGE, the Local, and the U.S. Department of Labor.  In his lengthy eight-count Complaint, Hudson accuses Defendants of violating a number of federal statutes and the common law.  In response, Defendants filed separate Motions to Dismiss — one of which the Court granted earlier this month.  <u>See</u> <u>Hudson v. AFGE</u>, No. 19-2738, 2020 WL 2496952, at *1 (D.D.C. May 14, 2020) (concluding that sole count against Labor was "moot and facially defective").  In seeking dismissal, AFGE and the

1

Local raise assorted arguments, including lack of subject-matter jurisdiction and failure to state a claim. Agreeing with their positions, the Court will grant the remaining Motions.

## I.       Background

In the last few years, this Court has issued numerous Opinions detailing Hudson's clashes with AFGE and its leadership. See, e.g., Hudson v. AFGE, No. 17-2094, 2020 WL 1275685, at *1–2 (D.D.C. Mar. 17, 2020). It will not recount the full history of the parties' disputes but will instead focus on those facts relevant to the instant Motions. And, as is required at this juncture, it will draw the facts from the operative Complaint. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Hudson has been an AFGE member since 1979. See ECF No. 25 (Corrected Amended Complaint), ¶ 27. For most of the last forty years, he was part of Local 2452 — an AFGE branch based in California. Id. at 5 & ¶¶ 27–28, 39–40. While a member of this affiliate, Plaintiff rose within the Union's ranks, serving in multiple leadership positions. Id., ¶¶ 28–32. In 2012, Hudson reached the height of his AFGE career when he became the first black person elected to serve as National Secretary Treasurer — the Union's second highest office. Id., ¶¶ 33–34. To take on his new responsibilities as NST, he left the Golden State and settled in Maryland to be nearer AFGE's D.C. headquarters. Id., ¶ 41. Plaintiff saw some success during his five-year stint as NST; in 2015, for example, he was re-elected to the position. Id., ¶ 42. Despite his triumphs, he found himself enmeshed in conflicts with several Union leaders, who voted to remove him from his post in 2017, which removal is the subject of another ongoing suit. Id. at 9–10.

These events, however, did not curtail Plaintiff's interest in remaining active in Local affairs. Id. at 5 & ¶ 45. In 2018, he sought to run for the position of Treasurer of AFGE's Local

1923, a branch based in Baltimore.  Id., ¶ 45.  To do so, he first needed to transfer his

membership from his previous Local on the West Coast to Local 1923.  Id.  Plaintiff therefore

submitted a transfer application along with $50 to cover his annual dues as an active retiree

member — the membership status he reached when he turned 60 years old in 2013.  Id., ¶¶ 37,

46–64.  On September 24, 2018, Local 1923's members approved Hudson's request.  Id., ¶ 68.

Some months later, in December 2018, he lost his bid to become the Local's Treasurer.

Id., ¶ 74.  He did not go away quietly, though.  Shortly after the election, he filed a formal protest

within the Local, citing various "irregularities [and] violations of the law" during the election

process.  Id., ¶¶ 75–76.  When the Local denied his protest, he sought relief from AFGE

National.  Id., ¶ 76.  And when that did not pan out, he filed an administrative complaint with the

Department of Labor.  Id., ¶¶ 78–81.

Matters only got worse for Plaintiff in 2019, when he became involved in another dust-up

with the Union.  At the heart of the strife was whether Hudson had paid the Local's annual dues.

In January 2019, the organization sent a letter to its retiree members seeking dues for that year.

Id., ¶¶ 82, 90; see also ECF No. 33-1 (Local 1923 Letter of Jan. 4, 2019) (requesting $50 dues).

Having received no response from Hudson, the Local followed up with another letter two months

later, reminding him to pay his dues.  Id., ¶¶ 82, 90; see also ECF No. 33-2 (Local 1923 Letter of

Mar. 4, 2019).  This second letter explicitly warned that if payment was not received by April 15,

2019, his "name [would] be removed from the membership roles [sic]."  Mar. 4 Ltr.  Hudson did

not respond to this letter either.  See Cor. Am. Compl., ¶¶ 82, 90.  So, on April 15, the Local

followed through on its announcement and canceled Plaintiff's membership.  Id., ¶ 90.

Hudson, for his part, alleges that he never saw these letters.  Id., ¶ 82.  In his view, the

Local should have sent its requests to "his email account or by certified mail."  Id., ¶ 111.  At any

rate, Plaintiff maintains that he had already paid a portion of his 2019 dues when he submitted

his transfer application in September 2018.  Id., ¶ 64.  According to Hudson, the then-President

of Local 1923 advised him that his payment covered his membership for an entire twelve-month

period — that is, until September 2019.  Id.

On April 23, 2019, Plaintiff finally learned that the Local had rescinded his membership.

Id., ¶ 86.  Seeking to re-establish his enrollment, he sent an email to newly elected Local

President Anita Autrey along with a $50 money order three days later.  Id., ¶¶ 87–88.  This

attempt, however, did not move the needle.  Autrey informed him that, while his "retiree dues

were paid for 2018," he had failed to remit his 2019 dues during the designated timeframe.  Id.,

¶ 90.  For that reason, she explained that his "membership with AFGE Local 1923 ha[d] been

irretrievably severed."  Id. (quoting Autrey Email of Apr. 30, 2019).  Within days, she returned

his money order.  Id., ¶ 91.

Not so easily deterred, Hudson "appealed" this membership decision directly to AFGE

National President J. David Cox in June 2019.  Id., ¶ 113.  This effort met with little success.

The National President responded that the conflict involved a Local matter that was outside of

his purview.  Id., ¶ 114; see also ECF No. 8-2 (Exhibits of Sept. 13, 2019) at ECF p. 68 (Cox's

Response of June 25, 2019) (stating that "AFGE National Constitution does not provide a direct

right of appeal of a local's decision to terminate an individual's membership").  Cox's inaction,

in Plaintiff's view, not only ran contrary to the Union's Constitution but was also at odds with

measures that the National President had taken in other cases involving similar membership

disputes.  See Cor. Am. Compl., ¶¶ 115–27.

The upshot of all this was that Hudson was not a member in good standing at the Local in

2019.  Id., ¶ 104.  Not surprisingly, such status deprived him of a number of rights, including the

right to vote in Local elections, nominate candidates for office, and run and serve (if elected) as a union delegate. Id. Plaintiff, moreover, was not permitted to attend the Local's general membership meetings. Id., ¶ 105. When he attempted to do so in August 2019, Autrey, "in the presence of Local 1923 members," told Hudson that he was "not a member in good standing" and denied him entry. Id.

On September 12, 2019, Plaintiff sued AFGE National, the Local, Autrey, and Labor. See ECF No. 1 (Complaint). About a week later, he filed a 57-page Corrected Amended Complaint that contains a mishmash of allegations revolving around the Local's decision to rescind his membership. See Cor. Am. Compl., ¶¶ 141–215 (Counts I–VIII). That action, in his view, violated a host of federal statutes and the common law. Id. (asserting violations of the Labor Management Reporting and Disclosure Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, as well as breach of contract, breach of the duty of good faith and fair dealing, and defamation).

In separate Motions, Defendants AFGE, Local 1923, and DOL seek dismissal of the Complaint on two principal grounds — lack of jurisdiction and failure to state a claim. See ECF No. 52 (AFGE National); ECF No. 58 (AFGE Local 1923); ECF 61 (Department of Labor). On May 14, 2020, this Court granted the Government's Motion. See Hudson, 2020 WL 2496952, at *1. It is now ready to rule on the remaining two. As discussed below in Section III, Autrey was never served and thus has not appeared in the litigation.

## II.      Legal Standard

Defendants' Motions invoke the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must show that the Court has subject-matter jurisdiction to hear his claim.

See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Absent subject matter jurisdiction over a case, the court must dismiss [the claim]." Bell v. U.S. Dep't of Health & Human Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

In policing its jurisdictional borders, a court must scrutinize the complaint, granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). A court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones. See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

Further, Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." The pleading rules, however, are "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The Court need not accept as true, then, "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). In short, the facts

alleged in the complaint "must be enough to raise a right to relief above the speculative level."
Twombly, 550 U.S. at 555–56.

III.    **Analysis**

Before diving into Hudson's claims, the Court will briefly address a threshold issue —
whether Plaintiff properly served Local 1923 and Autrey in her individual capacity.  Even a
cursory review of his filings reveals that he has not done so.

As the Local rightly points out, Hudson's attempted service was inadequate for a number
of reasons.  See Local MTD at 21–23.  First, he did not serve the Local with a summons actually
naming it as a defendant in the case.  See Fed. R. Civ. P. 4(a)(1)(B) (stating that "[a] summons
must be directed to the defendant"); ECF No. 58-2 (Declaration of Aaron McCoy), ¶¶ 6, 10; id.,
Exh. A (Summons).  Second, Plaintiff did not attach the operative pleading — the Corrected
Amended Complaint — to the summons.  See McCoy Decl., ¶ 8.  Instead, he included a copy of
the original Complaint, which had already been superseded at the time of service.  Compare ECF
No. 38 (Proof of Service) (Oct. 15, 2019), with Cor. Am. Compl. (filed Sept. 18, 2019); see also
Gilles v. United States, 906 F.2d 1386, 1390 (10th Cir. 1990) (explaining that when amended
pleading supersedes original complaint, subsequent service of original pleading is improper).
Third, nowhere in her Proof of Service affidavit does Hudson's server indicate that she actually
served the Local.  See Proof of Service (devoid of any reference to Local 1923).  Rather, she
declared that she left the relevant materials with Aaron McCoy, who "accept[ed] service of
process on behalf of the Social Sec[urity] Office."  Id.  Fourth, Plaintiff has offered no proof that
he even attempted to serve Autrey in her individual capacity.  See Fed. R. Civ. P. 4(e) (laying out
requirements to serve individual).

Unfortunately for Hudson, his Opposition does little to help his cause; in fact, it is silent on all these shortcomings.  See ECF No. 66 (Pl. Opp.).  A court, as a general matter, will not entertain a lawsuit against a defendant where service is not properly effectuated in a timely manner.  See Fed. R. Civ. P. 4(m) (setting 90-day limit); Bush v. WMATA, No. 19-930, 2020 WL 921419, at *2 (D.D.C. Feb. 26, 2020).  Out of an abundance of caution, this Court will nevertheless set out below why dismissal of the Local and Autrey is appropriate on multiple other grounds.  This seems the wiser course since a process-based dismissal could permit Hudson to properly serve these Defendants at a later time, and the parties would be right back where they are now.

With that issue resolved, the Court can move to the merits of the matter.  As will become plain shortly, doing so is no easy task.  For Hudson, instead of setting out one claim per count, asserts myriad intertwined claims within different counts that invoke federal statutes and the common law against several Defendants.  See Cor. Am. Compl., ¶¶ 141–215.  For ease of analysis, then, rather than evaluate the eight counts individually, the Court will group the claims by separate type.

A. LMRDA

A common thread running through the operative Complaint is that Defendants violated Hudson's rights under Title I of the LMRDA's Bill of Rights by revoking his membership and preventing him from running for office in local elections.  See Cor. Am. Compl., ¶¶ 141–61, 185–206 (Counts I–II, V–VII).  As pertinent here, the LMRDA provides that union members shall have equal rights and privileges to vote and participate in elections, express their views freely, and be free from improper discipline.  See 29 U.S.C. § 411(a)(1), (2), (5).  Hudson, accordingly, contends that he cannot be denied these membership rights.

8

His claims, however, run up against a series of roadblocks.  To begin with, this Court has already explained that it has no jurisdiction to adjudicate LMRDA claims against the Local.  See Hudson v. AFGE, No. 19-2738, 2019 WL 6683778, at *2–3 (D.D.C. Dec. 6, 2019).  Relevant here, the Act covers a "labor organization engaged in an industry affecting commerce and includes any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers."  29 U.S.C. § 402(i).  As our Circuit noted, the statute's "definition of 'employer[]' specifically excludes federal, state and local governments." Wildberger v. AFGE, 86 F.3d 1188, 1192 (D.C. Cir. 1996) (citing 29 U.S.C. § 402(e)); see also Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 201 (3d Cir. 1990) (Alito, J.) (same). Armed with this authority, this Court previously found that the LMRDA was therefore inapplicable to the Local, which represents only government employees.  See Hudson, 2019 WL 6683778, at *3.

The same cannot be said for AFGE, however, as it is a "mixed" union, "represent[ing] both government and private sector workers."  Wildberger, 86 F.3d at 1192.  This point notwithstanding, Hudson's LMRDA claims ultimately fare no better against AFGE, as they are preempted.  To be more specific, AFGE correctly argues that Title VII of the Civil Service Reform Act of 1978, see 5 U.S.C. § 7101 et seq., precludes this Court from exercising jurisdiction over Plaintiff's claims.  See AFGE MTD at 5–16.

The CSRA, which "establishes a comprehensive scheme to deal with labor relations" for the federal government, expressly addresses membership in a federal-sector union.  AFGE v. U.S. Sec'y of Air Force, 716 F.3d 633, 636 (D.C. Cir. 2013) (quoting Dep't of Def. v. FLRA, 685 F.2d 641, 644 (D.C. Cir. 1982)).  The Act applies to Hudson, a retired federal employee,

who disputes his membership in Local 1923 — a labor organization of government employees covered under the Act.  Two provisions in the Act bear on Hudson's allegations.

First, Section 7116 — with few exceptions — prohibits a labor organization from engaging in unfair labor practices, such as denying union membership to any employee it represents.  See 5 U.S.C. § 7116(c).  This provision has been interpreted to cover cases in which a labor organization of government employees has "expel[led] a <u>current</u> member or den[ied] readmission to a <u>former</u> member."  <u>NFFE Local 2189 and Jonathan Jarman</u>, 68 F.L.R.A. 374, 376–77 (Mar. 24, 2015); <u>see also</u> <u>AFGE Local 987 Warner Robins, GA and Nedra Bradley</u>, 53 F.L.R.A. 364, 368–69 (Sept. 10, 1997) (observing that provision applies to litigant who had retired from federal employment because "retired employees can be union members and officers").  The Act creates a pathway for those seeking to challenge a union's decision regarding membership.  In broad strokes, they can do so by filing an unfair-labor-practice charge with the Federal Labor Relations Authority.  See 5 U.S.C. § 7105(a)(2)(G).  The Authority's General Counsel then decides whether to dismiss or pursue the charge.  See <u>Nat'l Air Traffic Controllers Ass'n v. Fed. Svc. Impasses Panel</u>, 606 F.3d 780, 783 (D.C. Cir. 2010).  A party "aggrieved" by that decision can then seek judicial review in the court of appeals.  See 5 U.S.C. § 7123.

In addition, Section 7120 governs the sorts of election-related grievances that Hudson brings here.  Specifically, this provision regulates officer elections in federal-sector unions.  See 5 U.S.C. § 7120(a)(1) ("calling for the maintenance of democratic procedures and practices including provisions for periodic elections to be conducted subject to recognized safeguards and provisions defining and securing the right of individual members to participate in the affairs of the organization").  Here, too, the Act contemplates a specific adjudicative forum for unfair labor practices arising during the election process.  That is, any complaints with respect to an election

"shall be filed with the Assistant Secretary [of Labor for Labor Management Relations]." Id.,
§ 7120(d). Further, nowhere does the statute or its implementing regulations vest district courts
with the jurisdiction to adjudicate or review election issues. See Celli v. Shoell, 40 F.3d 324,
327 (10th Cir. 1994) ("Neither [the CSRA] nor its implementing regulations at 29 C.F.R. parts
457 and 458 create a right of action in district court.").

These provisions are but two examples that highlight the integrated and exclusive nature
of the Act. See AFGE, 716 F.3d at 636. Given this comprehensive scheme, it is plain that
Congress intended that individuals bringing membership and election claims of the type
governed by the CSRA must seek redress through its administrative pathway, not through the
district court. As the Supreme Court has made clear, "[E]xtra statutory review is not available to
those employees to whom the CSRA grants administrative and judicial review." Elgin v. U.S.
Dep't of Treasury, 567 U.S. 1, 11 (2012). To borrow from the D.C. Circuit, Hudson "'may not
circumvent that structure' by seeking judicial review outside the CSRA's procedures." AFGE,
716 F.3d at 636 (quoting Steadman v. Governor, U.S. Soldiers' & Airmen's Home, 918 F.2d
963, 967 (D.C. Cir. 1990)).

It makes little difference, moreover, that he frames his claims as violations of the
LMRDA; at bottom, he is challenging purportedly unfair labor practices. See Bourdon v.
Canterbury, 813 F. Supp. 2d 104, 107 (D.D.C. 2011) ("The plaintiffs, however, may not bypass
the CSRA's comprehensive statutory scheme by framing their duty of fair representation [— i.e.,
unfair-labor-practices — ] claims as violations of the . . . LMRDA."); see also id. at 107 n.4
(reasoning that claims against mixed unions may be preempted if such claims, in essence, allege
unfair labor practices under CSRA); Burton v. AFGE, No. 11-1416, 2012 WL 3580399, at *13
(E.D.N.Y. Aug. 17, 2012) (holding that duty-of-fair-representation — that is, unfair-labor-

practices — claims against "AFGE, the local, or [its] employees" were preempted under Act).

His claims are therefore preempted.  See Wood v. AFGE, 255 F. Supp. 3d 190, 195 (D.D.C.

2017).

To resist this conclusion, Plaintiff advances a few arguments, but none is persuasive.

Without citing any caselaw, he first maintains that the CSRA does not apply to him because he is

a retiree of the federal government.  See Pl. Opp. at 7–8; see also Cor. Am. Compl., ¶ 37

(acknowledging "active retiree" status).  Yet, in several cases, courts — including the Supreme

Court — have applied the Act to "former federal employees" seeking reinstatement of their

government positions or benefits.  See, e.g., Elgin, 567 U.S. at 6–8; Lampon-Paz v. OPM, 732 F.

App'x 158, 159 (3d Cir. 2018) (affirming dismissal of former federal employee's allegations on

CSRA-preemption grounds); Bell v. Laborde, 204 F. App'x 344, 345–46 (5th Cir. 2006)

(approving district court's decision to preclude former federal employee's constitutional and

state-law claims under CSRA).  This same rationale applies to former federal employees vis-à-

vis their unions.  See Buesgens v. Coates, 435 F. Supp. 2d 1, 2–4 (D.D.C. 2006) (concluding that

it lacked jurisdiction over federal-sector retiree's claim against his union because it was covered

by CSRA and could be brought only before Authority).

In rejoinder, Hudson points out that an FLRA regional director wrote to him, explaining

that retired federal employees are not covered under the Act; as a result, he says, he cannot travel

the CSRA administrative path.  See ECF No. 80-1 (Mar. 4, 2020, FLRA Dismissal Letter).  That

decision appears to be in clear tension with the cases cited above.  In any event, as the letter itself

explains, Hudson can appeal this ruling to the Authority's General Counsel and eventually to the

D.C. Circuit.  See id.; 5 U.S.C. § 7123.  If the ultimate outcome of those appeals is that the

CSRA does not apply to him because of his retiree status, he can then move to vacate the dismissal of this action and proceed here once again.

In addition, he relies on Solis v. AFGE, 763 F. Supp. 2d 154 (D.D.C. 2011), to argue that his LMRDA claims are viable. See Pl. Opp. at 11–12. As here, that case involved a disagreement over an individual's membership status and eligibility to run for office. See Solis, 763 F. Supp. 2d at 156–58. The similarities end there. Solis involved a civil action filed by Labor, rather than one brought by the aggrieved individual, as in this case. This difference in posture matters, as the LMRDA expressly provides DOL the right to enforce certain violations in the district court. See 29 U.S.C. § 482(b). In addition, the election at issue in Solis was at AFGE's national level and did not involve a local affiliate representing only government employees. The opposite is true here, where the gravamen of Hudson's complaint is directed at the Local's membership and electoral decisions. And, as the Court has already explained, Local 1923 is exempt from the LMRDA. Since Plaintiff cannot circumvent the administrative procedures available to him under the CSRA, the Court will dismiss Hudson's LMRDA counts for want of jurisdiction.

B. Contract Claims

Next up are Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing. See Cor. Am. Compl., ¶¶ 141–52, 162–72 (Counts I and III). Hudson's theory appears to be that Defendants should not have revoked his membership without notice. Id., ¶¶ 148, 164–65, 168. Their failure to provide him such notice, says Plaintiff, violated the "AFGE and Local 1923 Constitutions [and] the AFGE NEC Dues Policy." Id., ¶¶ 146, 148.

The Court can make quick work of these counts, as they are also preempted by the CSRA. Although Plaintiff couches his claims in terms of breach of contract and the implied

covenant, the alleged factual basis for these actions is the revocation of his Local membership.

See Cor. Am. Compl., ¶¶ 148, 164–65, 168.  As detailed above, this is precisely the kind of

grievance that is covered by the CSRA.  See 5 U.S.C. § 7116(c) (addressing membership issues).

Indeed, he is free to pursue an unfair-labor-practice claim within the Act's statutory framework.

Id., § 7105(a)(2)(G).  What he cannot do, however, is avoid those procedures by seeking judicial

review here.  See AFGE, 716 F.3d at 636.  These contract claims thus proceed no further.

C.  Discrimination

Counts I, II, and VIII allege that Defendants violated Title VII and 42 U.S.C. § 1981.

See Cor. Am. Compl. at 42, 44, 54–55.  More concretely, Hudson maintains that he was

discriminated against on the basis of race when the Local rescinded his membership and left his

name off a members-in-good-standing list provided to Labor.  Id., ¶¶ 141, 153, 201–12.

According to him, moreover, AFGE is on the hook because it refused to reinstate his

membership.  Id., ¶¶ 212, 214.  Finally, Plaintiff alleges that Defendants' actions were in

retaliation for prior complaints of race discrimination he lodged against AFGE.  Id., ¶ 210

(referencing filing of both July 2017 EEO complaint and October 2017 discrimination suit).

In their Motions, Defendants posit that these claims are also preempted by the CSRA and

should thus be dismissed.  See AFGE MTD at 14–16; Local MTD at 15.  Under that statute, a

labor organization has a duty to represent "the interests of all employees in the unit it represents

without discrimination."  5 U.S.C. § 7114(a)(1).  A breach of this duty constitutes an unfair labor

practice.  Id., § 7116(b)(2) (deeming it such a practice "to cause or attempt to cause an agency to

discriminate against any employee"); id., § 7116(b)(4) (prohibiting "discrimin[ation] against an

employee with regard to the terms or conditions of membership . . . on the basis of race").

Retaliating against a member is also considered an unfair labor practice.  Id., § 7116(b)(3).  And,

as the Supreme Court has stated, "[U]nfair labor practice complaints are adjudicated by the [Authority]." Karahalios v. NFFE, Local 1263, 489 U.S. 527, 532 (1989); cf. AFGE, Local 495 and Linda Moore, 22 F.L.R.A. 966, 975 (July 31, 1986) (noting that Authority has exclusive jurisdiction over alleged charges that union had discriminated against member in violation of § 7116).

To that end, Plaintiff cannot escape the CSRA's reach by dressing up his membership claim with a different label — i.e., Title VII and Section 1981. See, e.g., Johnson v. Principi, No. 03-1367, 2004 WL 2044258, at *5–7 (N.D. Ill. Sept. 3, 2004) (determining that CSRA preempts § 1981 claim against union); see also Wisham v. Commissioner, No. 08-8926, 2009 WL 2526245, at *3 (S.D.N.Y. Aug. 19, 2009) (same).

As a fallback, Defendants argue that Plaintiff's retaliation claim also falls short on 12(b)(6) grounds. See AFGE MTD at 24–26; Local MTD at 17–18. The Court agrees. Both Title VII and Section 1981 forbid retaliation against employees who engage in protected activity. See 42 U.S.C. § 2000e–3(a); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 446 (2008) (holding that § 1981 encompasses retaliation claims). To establish a prima facie case of retaliation, a plaintiff must show that he engaged in protected activity, that his "employer took an adverse personnel action against [him]," and that "a causal connection exists between the two." Carney v. Am. Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998).

The Local contends that Hudson's EEO complaint and 2017 discrimination lawsuit were filed against AFGE National. See Local MTD at 18. Because it was not the target of either effort, the Local argues that it could not have retaliated against Plaintiff as a matter of law. Id. For its part, AFGE posits that Hudson cannot establish a causal connection between the protected events and the alleged retaliatory act. See AFGE MTD at 25. The two, says AFGE, are

separated by too much time to support an inference of causation. Id. (collecting cases where courts held that more than three months is typically insufficient to establish causation). Recall that the purported adverse action here occurred at the earliest in June 2019, when the National President declined to reinstate Plaintiff's Local membership. That was over a year and a half after Hudson filed his discrimination suit in this Court. See Cor. Am. Compl., ¶ 210.

Perhaps recognizing the writing on the wall, Plaintiff did not address any of these discrimination arguments in his Opposition. He has thus conceded them. See Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc., 217 F. Supp. 3d 79, 82–83 (D.D.C. 2016) (citing LCvR 7(b)); see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). In the end, no matter how Defendants slice it, Hudson's discrimination claims do not clear the dismissal hurdle.

   D. Defamation

In Count IV, Hudson alleges that there are three bases for finding Defendants liable for defamation. First, he maintains that Autrey made a defamatory remark when she informed Local 1923 members that Plaintiff was not a member in good standing. See Cor. Am. Compl., ¶¶ 105, 177. Hudson next alleges that AFGE "ratified" this defamation when the National President did not "direct her to retract" her statement. Id., ¶ 178. Finally, Plaintiff says that AFGE defamed him when it provided Labor "with a list of AFGE Local 1923 members in good standing" — a list that did not include Hudson. Id., ¶ 179. Defendants, once again, mount a two-prong attack on this count.

16

To start, they maintain that Plaintiff's defamation count is preempted by the CSRA. See AFGE MTD at 11; Local 1923 at 12–13. The Court agrees. Once it looks beyond the count's label, it is apparent that the substance of his claim again concerns the revocation of his Local 1923 membership — a purported unfair labor practice under the CSRA. See Cor. Am. Compl., ¶ 175 (alleging that Autrey's statement regarding Hudson's loss of membership was false, slanderous, and defamatory). For that reason, he cannot bypass that Act's statutory scheme simply by "labelling his claim as one for 'defamation,'" as it "would [still] be subject to preemption." Wood, 255 F. Supp. 3d at 196.

Even if preemption does not apply here, Defendants contend that Hudson has not cleared the pleading bar. To make out a defamation claim under D.C. law, a plaintiff must establish four elements: "[1] a [false and] defamatory statement, [2] publication to a third party, [3] negligence, and [4] either that the statement is actionable as a matter of law or that publication caused the plaintiff special harm." Westfahl v. Dist. of Columbia, 75 F. Supp. 3d 365, 375 (D.D.C. 2014) (citing Oparaugo v. Watts, 884 A.2d 63, 76 (D.C. 2005)).

In Defendants' view, the defamation count does not even make it out of the starting gate because they never made an untruthful statement. See AFGE MTD at 22–24; Local MTD at 18–21. More specifically, Defendants note that Hudson had indisputably failed to pay his dues and therefore was not a member in good standing. See Moss v. Stockard, 580 A.2d 1011, 1022 (D.C. Cir. 1990) (declaring that "truth is an absolute defense" to defamation claim); AFGE MTD at 23–24; Local MTD at 20; see also Cor. Am. Compl., ¶ 90 (quoting Autrey's explanation for revoking his membership). Plaintiff may have complained about the Local's refusal to reinstate him, but that does not mean that he was a member at the time the statements were made. Hudson, in any event, takes a head-in-the-sand approach. Nowhere in his Opposition does he

17

provide any further support for his defamation count or address any of Defendants' arguments on this score, thus conceding the claim.  Putting this all together, then, the Court will dismiss the defamation count against Defendants.

> E.  <u>LMRA</u>

In Counts V, VI, and VII, Hudson states that Defendants violated Section 301 of the LMRDA, citing 29 U.S.C. § 185(a).  <u>See</u> Cor. Am. Compl., ¶¶ 186, 193, 201.  Section 301 of the LMRDA, however, is actually codified at 29 U.S.C. § 461 and is a provision about trusteeship. Acknowledging his error, Plaintiff concedes that this section is immaterial to his Complaint.  <u>See</u> Sur-Reply at 11.

In an attempt to rescue his suit, he recently filed a Motion to Amend his Complaint to assert a claim under Section 301 of the Labor Management Relations Act — <u>i.e.</u>, the <u>LMRA</u>, not the LMRDA.  <u>See</u> ECF No. 99 (Pl. Second Mot. to File Third Amended Compl.) at 1.  Hudson says that he "inadvertently omitted" the citation to the correct statute in his "first and second amended complaints."  <u>Id.</u>  Under Federal Rule of Civil Procedure 15(a), "[l]eave to amend . . . 'shall be freely given when justice so requires.'"  <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  That said, courts may deny a plaintiff's motion if it is futile — that is, "if the amended pleading would not survive a motion to dismiss."  <u>In re Interbank Funding Corp. Secs. Litig.</u>, 629 F.3d 213, 218 (D.C. Cir. 2010).  That is the case here.

Some background may prove useful.  Section 301 of the LMRA provides a federal cause of action for suits alleging a "violation of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations."  29 U.S.C. § 185(a).  Here, Plaintiff maintains that Defendants violated this provision by failing to provide him with "due process" before removing his membership and denying him the right to run for

office.  See ECF No. 99-1 (Proposed Third Amended Compl.), ¶¶ 261, 281, 288–89.  Hudson

also takes issue with Defendants' decision not to include his name among the list of Local

members in good standing.  Id., ¶ 262.  All these acts, Hudson tells the Court, violated

Defendants' constitutions along with AFGE's "Dues Delinquency Policy."  Id., ¶¶ 262, 281.

Plaintiff's LMRA claims hit several jurisdictional snags.  First, as several courts,

including this one, have recognized, the LMRA, just like the LMRDA, does not apply to public-

sector unions.  See, e.g., Pacific Mar. Ass'n v. Local 63, Int'l Longshoremen's &

Warehousemen's Union, 198 F.3d 1078, 1081 (9th Cir. 1999); Richards v. Ohio Civil Serv.

Emps. Assoc., 205 F. App'x 347, 354 (6th Cir. 2006); Hudson v. AFGE, 318 F. Supp. 3d 7, 14

(D.D.C. 2018); Bourdon, 813 F. Supp. 2d at 107 n.4 (collecting cases).  The Court, accordingly,

has no jurisdiction over these LMRA claims against the Local.

In addition, the CSRA once again preempts these claims against both the Local and

AFGE.  Plainly, Hudson's LMRA counts (just like his others) hinge on the loss of his Local

membership and inability to run for office.  See Bourdon, 813 F. Supp. 2d at 107 & n.4 (focusing

on substance of allegations); cf. Hudson, 318 F. Supp. 3d at 13–15 (jurisdiction existed where

underlying claim concerned plaintiff's removal from national leadership position).  As set out in

greater detail above, he can challenge these grievances within the CSRA's framework.  See 5

U.S.C. §§ 7105(a)(2)(G), 7116(c), 7120(a)(1), 7120(d).  As a result, he cannot get around the

CSRA by disguising his claims as violations of the LMRA.  See Bourdon, 813 F. Supp. 2d at

107 (ruling that plaintiffs "may not bypass the [Act]'s comprehensive statutory scheme by

framing [unfair-labor-practices] claims as violations of the LMRA").  These claims,

consequently, are fatally defective on jurisdictional grounds.

*       *       *

Last, this Court will dismiss the entirety of Hudson's Complaint against Autrey in her individual capacity, thus mooting any subsequent effort to serve her and thereby revive his claim. For one, individuals cannot be liable under several of the statutes that Plaintiff invokes.  See, e.g., Carino v. Stefan, 376 F.3d 156, 159–60 (3d Cir. 2004) (explaining that officers in labor unions cannot be held liable under Section 301 of LMRA in their individual capacities); Smith v. Janey, 664 F. Supp. 2d 1, 8 (D.D.C. 2009) ("[T]here is no individual liability under Title VII . . . .").  In any event, Hudson's claims against Autrey are substantively indistinguishable from those he brings against the Local.  That is, they are either preempted by the CSRA or do not clear the 12(b)(6) hurdle.  As such, the claims against her fail as roundly as the rest.

## IV.    Conclusion

The Court, accordingly, will grant Defendants' Motions to Dismiss.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  June 5, 2020